IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

BELINDA JO WINDHAM, )
)
Plaintiff, )
)
v. ) 1:16CV1338
)
NANCY BERRYHILL, )
Acting Commissioner of Social Security )
Administration, )
)
Defendant. )

**MEMORANDUM OPINION AND RECOMMENDATION
OF UNITED STATES MAGISTRATE JUDGE**

Plaintiff Belinda Jo Windham brought this action to obtain review of a final decision of the Commissioner of Social Security denying her claims for disability insurance benefits ("DIB") and supplemental security income ("SSI"). The Court has before it the certified administrative record[1] and cross-motions for judgment.

**I. PROCEDURAL HISTORY**

Plaintiff filed applications for DIB and SSI in December of 2012 alleging a disability onset date of September 24, 2012. (Tr. 245-51, 254-57.) The applications were denied initially and upon reconsideration. (*Id.* at 90-91, 120-21.) Plaintiff requested a hearing before an Administrative Law Judge ("ALJ") which was held on March 18, 2015. (*Id.* at 31-65.)

---

[1] Transcript citations refer to the Administrative Transcript of Record filed manually with the Commissioner's Answer. (Docket Entry 9.)

After the hearing, the ALJ determined that Plaintiff was not disabled. (*Id.* at 12-25.) The Appeals Council denied a request for review, making the ALJ's determination the Commissioner's final decision for purposes of review. (*Id.* at 1-5.)

## II. STANDARD FOR REVIEW

The scope of judicial review of the Commissioner's final decision is specific and narrow. *Smith v. Schweiker*, 795 F.2d 343, 345 (4th Cir. 1986). Review is limited to determining if there is substantial evidence in the record to support the Commissioner's decision. 42 U.S.C. § 405(g); *Hunter v. Sullivan*, 993 F.2d 31, 34 (4th Cir. 1992); *Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). "In reviewing for substantial evidence, [the Court] do[es] not re-weigh conflicting evidence, make credibility determinations, or substitute its judgment for that of the Commissioner." *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996). The issue before the Court, therefore, is not whether Plaintiff is disabled but whether the Commissioner's finding that she is not disabled is supported by substantial evidence and was reached based upon a correct application of the relevant law. *Id.*

## III. THE ALJ'S DECISION

The ALJ followed the sequential analysis, which is set forth in 20 C.F.R. §§ 404.1520 and 416.920, to ascertain whether the claimant is disabled. *See Albright v. Comm'r of Soc. Sec. Admin.*, 174 F.3d 473, 475 n.2 (4th Cir. 1999).[2] The ALJ determined at step one that Plaintiff

---

[2] "The Commissioner uses a five-step process to evaluate disability claims." *Hancock v. Astrue*, 667 F.3d 470, 472-73 (4th Cir. 2012) (citing 20 C.F.R. § 416.920(a)(4)). "Under this process, the Commissioner asks, in sequence, whether the claimant: (1) worked during the alleged period of disability; (2) had a severe impairment; (3) had an impairment that met or equaled the requirements of a listed impairment; (4) could return to his [or her] past relevant work; and (5) if not, could perform

2

had not engaged in substantial gainful activity since the September 24, 2012 alleged onset date. (Tr. 14.) The ALJ next found the following severe impairments at step two: scoliosis with rod placement, bursitis in bilateral hips, and migraine headaches. (*Id.* at 15.) At step three, the ALJ found that Plaintiff did not have an impairment or combination of impairments listed in, or medically equal to, one listed in Appendix 1. (*Id.* at 15-16.)

The ALJ next set forth Plaintiff's Residual Functional Capacity ("RFC") and determined that she could perform sedentary work with the following limitations:

> occasional climbing of ramps and stairs; occasional kneeling, crawling, and crouching; occasional stooping; occasional balancing; she may tolerate no more than moderate exposure to noise; she may perform no repetitive reaching overhead; and must never climb ropes, ladders or scaffolds; and she must avoid concentrated exposure to hazards.

(*Id.* at 16-17.) At step four, the ALJ determined that Plaintiff was able to perform past relevant work as a directory assistance operator. (*Id.* at 22.) Last, at step five, the ALJ determined that there were jobs in the national economy that Plaintiff could perform. (*Id.* at 23-24.) Consequently, the ALJ concluded that Plaintiff was not disabled. (*Id.* at 24.)

## IV. ISSUES AND ANALYSIS

Plaintiff raises two issues in her brief. First, she contends that the ALJ erred by finding that Plaintiff had the RFC to perform a reduced range of sedentary work. (Docket Entry 12 at 6-9.) Second, Plaintiff contends that the ALJ failed to accord the appropriate weight to the

---

any other work in the national economy." *Id.* A finding adverse to the claimant at any of several points in this five-step sequence forecloses a disability designation and ends the inquiry. *Id.*

medical opinion of Plaintiff's treating physician, Dr. Richard Rauck. (*Id.* at 9-12.) For the following reasons, the Court disagrees.

### A. Substantial evidence supports the ALJ's RFC determination.

Plaintiff argues that the ALJ erred in the RFC assessment by finding that Plaintiff could perform a reduced range of sedentary work. (*Id.* at 6-9.) RFC measures the most a claimant can do in a work setting despite the physical and mental limitations of her impairment and any related symptom (*e.g.,* pain). *See* 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1); *see also Dunn v. Colvin*, 607 F. App'x 264, 272 (4th Cir. 2015) (unpublished) (claimant's RFC is "[a] medical assessment of what an individual can do in a work setting in spite of the functional limitations and environmental restrictions imposed by all of his or her medically determinable impairment(s).") (internal citation omitted); *Hines v. Barnhart*, 453 F.3d 559, 562 (4th Cir. 2006). The RFC includes both a "physical exertional or strength limitation" that assesses the claimant's "ability to do sedentary, light, medium, heavy, or very heavy work," as well as "nonexertional limitations (mental, sensory or skin impairments)." *Hall v. Harris*, 658 F.2d 260, 265 (4th Cir. 1981).

"Social Security Ruling 96-8p explains that the RFC 'assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations).'" *Monroe v. Colvin*, 826 F.3d 176, 189 (4th Cir. 2016) (internal quotations omitted). An ALJ need not discuss every piece of evidence in making an RFC determination. *See Reid v. Commissioner of Soc. Sec.*, 769 F.3d 861, 865 (4th Cir. 2014) (citing *Dyer v. Barnhart*, 395

4

F.3d 1206, 1211 (11th Cir. 2005)). However, the ALJ "must build an accurate and logical bridge from the evidence to [the] conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000). As to the role of the function-by-function analysis, "[t]he RFC assessment must first identify the individual's functional limitations or restrictions and assess his or her work-related abilities on a function-by-function basis . . . . Only after that may RFC be expressed in terms of the exertional levels of work, sedentary, light, medium, heavy, and very heavy." SSR 96–8p, 1996 WL 374184, at *1.

In *Mascio v. Colvin*, 780 F.3d 632, 636 (4th Cir. 2015), the Fourth Circuit held that there is no *per se* rule requiring remand if a function-by-function analysis is not performed. However, the Court held that "where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review," remand may be appropriate. *Id.* (internal quotation and citations omitted). The Fourth Circuit has held that "[a] necessary predicate to engaging in substantial evidence review is a record of the basis for the ALJ's ruling[,]" which "should include a discussion of which evidence the ALJ found credible and why, and specific application of the pertinent legal requirements to the record evidence." *Radford v. Colvin*, 734 F.3d 288, 295 (4th Cir. 2013) (internal citations omitted).

Here, the ALJ considered the entire record, and determined that Plaintiff retained the RFC to perform a reduced range of sedentary work. (Tr. 16-22.) There is nothing in the record to suggest that the ALJ erred in her RFC assessment. As the ALJ reasoned, the diagnostic and clinical evidence did not support greater functional limitations resulting from

5

Plaintiff's back impairment, hip bursitis, and migraine headaches. (*Id.*) Diagnostic studies showed mild residual scoliosis of the spine with stable, solid thoracolumbar fusion and intact hardware and mild degenerative changes in her cervical/thoracic/lumbar spine. (*Id.* at 478, 482-84.)[3] X-ray of Plaintiff's right hip was normal showing no evidence of arthritis (*id.* at 450, 457) and a MRI of her brain was normal. (*Id.* at 438.) On examination, Plaintiff appeared to be in no acute distress and her neurological findings were generally unremarkable with full range of motion in all joints, full motor strength, intact sensation, and symmetrical reflexes. (*Id.* at 410-11, 430, 460-61, 477-78, 489.) Given Plaintiff's normal examination findings, treating physician Maura Hamrick, M.D., assessed Plaintiff as a "well patient without specific abnormalities on exam[ination]." (*Id.* at 397, 490.)

Furthermore, as the ALJ discussed, the longitudinal treatment record demonstrated that Plaintiff significantly benefited from treatment, including medication and hip injections, which undermines her claim of disabling pain and limitations. (*Id.* at 16-21.) For example, in 2014, Plaintiff on several occasions rated her pain as four out of ten with medication, and that she was "doing quite well" and engaging in "a lot of activity," including "working out in the yard." (*Id.* at 505, 510, 515, 520, 524, 532.) Plaintiff was able to lose 30 pounds that year because she engaged in regular exercise and ate healthy. (*Id.* at 488.) In December 2014, Plaintiff reported that "overall she fe[lt] like she [was] well controlled." (*Id.* at 500.) With treatment and weight loss, she continued to report improvement in 2015. For instance,

---

[3] Plaintiff had spinal fusion surgery in 1993 at the age of 13 to correct scoliosis. (Tr. 425.)

Plaintiff reported to her treating source that her pain was two out of ten with medication. (*Id.* at 494.)

Similarly, Plaintiff's migraine headaches were generally controlled with medication. (*Id.* at 20.) For instance, Plaintiff told her treating source that she found "great relief" from her headaches, attributing her "headache cessation" to the medication Elavil and diet modification (i.e., only eating organic foods). (*Id.* at 506.) She did "not normally have headaches anymore," reporting having a migraine only about "once a year." (*Id.* at 528.) In March 2015, Plaintiff sought chiropractic therapy for neck and low back pain. (*Id.* at 565-76.) At her latest documented visit, Plaintiff's treating physician noted that she tolerated and responded well to treatment. (*Id.* at 566.) Moreover, state agency physician Perry Caviness, M.D., concluded that Plaintiff did not have disabling functional limitations after reviewing the record. (*Id.* at 102-03.) *See* 20 C.F.R. §§ 404.1527(e)(2)(i), 416.927(e)(2)(i) (providing that state agency medical consultants are highly qualified physicians and experts in Social Security disability evaluation).

Beyond this medical evidence, Plaintiff's level of functioning and activities of daily living were inconsistent with her subjective allegations of disabling pain and limitations. During the relevant period, Plaintiff admitted to being "very active" and "doing a lot of activity" to her treating source. (Tr. 505, 520, 524.) For example, she hiked, went for walks, engaged in regular exercise, took her son on outings such as to the zoo, and gardened. (*Id.* at 47, 494, 505, 520, 524.) She also performed some work activity for a period. (*Id.* at 21, 494, 505.) *See* 20 C.F.R. §§ 404.1571, 416.971 (work even if not performed at the substantial

gainful activity level is a relevant consideration). In addition, she cared for her young son (who was three to five years old during the relevant period) and played with him, performed her personal care needs without difficulty, cleaned, washed dishes, laundered clothes, prepared meals, and went shopping. (Tr. 288-93.) In sum, substantial evidence supports the ALJ's RFC determination.

Plaintiff's arguments to the contrary are unpersuasive. Plaintiff argues that her "credibility testimony serves to illustrate that she is unable to work due to chronic pain." (Docket Entry 12 at 6.) Here, however, the ALJ found and further explained that Plaintiff's "statements concerning the intensity, persistence, and limiting effects of [her] symptoms [were] not entirely credible." (Tr. 18-21.) In reviewing the ALJ's credibility determination, the undersigned finds that it is supported by substantial evidence, including the findings previously mentioned above. *Johnson v. Barnhart*, 434 F.3d 650, 658 (4th Cir. 2005) ("Although we cannot make credibility determinations, we are empowered to review the ALJ's decisions for substantial evidence[.]").

Plaintiff also argues that the ALJ "erred by suggesting that [Plaintiff's] ability to perform ADLs when she is able indicates an ability to perform sedentary work on a sustained basis[.]" (Docket Entry 12 at 8.) The Court disagrees. Here, the ALJ properly considered Plaintiff's daily activities in assessing credibility and the RFC. (Tr. 17-21; *see also* 20 C.F.R. §§ 404.1545, 416.945, SSR 96-8p, 1996 WL 374184, *5 (explaining that RFC is based on all relevant evidence, including daily activities); 20 C.F.R. §§ 404.1529(c)(3)(i), 416.929(c)(3)(i), SSR 96-7p, 1996 WL 374186, *7-8 (providing that a claimant's daily activities is a relevant

factor to consider in assessing credibility); *Davis v. Colvin*, No. 13-768, 2014 WL 4181025, at *7 (E.D. Va. Aug. 18, 2014) (unpublished) ("[S]ince Plaintiff's daily activities are not reflective of one with debilitating symptoms, the [ALJ] properly took Plaintiff's daily activities into consideration regarding her credibility."), *Garrett v. Comm'r of Soc. Sec.*, 274 Fed. App'x 159, 164 (3d Cir. 2008). The ALJ noted that the daily activities were not "limited to the extent one would expect, given the complaints of disabling symptoms and limitations." (Tr. 20.) It is within the ALJ's authority to make such findings.

Also embedded in Plaintiff's RFC argument is an assertion that the ALJ improperly determined that Plaintiff could perform her past relevant work as a directory assistance operator. (Docket Entry 12 at 9.) Plaintiff relies upon the testimony of the vocational expert ("VE"). (*Id.*) The Court first notes that the ALJ also made an alternative step five finding, specifically noting other jobs in the economy which Plaintiff could perform. (Tr. 23-24.) Notwithstanding such, Plaintiff's step four argument is still unpersuasive.

Hypothetical questions need only incorporate those limitations that an ALJ accepts as credible and that are supported by the record. *See Russell v. Barnhart*, 58 F. App'x 25, 30 (4th Cir. 2003) (unpublished) ("While questions posed to the vocational expert must fairly set out all of the claimant's impairments, the question need only reflect those impairments supported by the record."). Accordingly, the ALJ was not required to include limitations in the hypothetical or accept answers to hypotheticals that she did not find supported by the record, as Plaintiff suggests.

Here, the ALJ posed a hypothetical question to the VE that conveyed all of Plaintiff's credibly supported functional limitations that were reflected in the RFC finding. (Tr. 16-17, 60.) In response to a hypothetical question that conveyed Plaintiff's functional limitations that the ALJ found were supported by the record, the VE testified that she could perform her past relevant work as a directory assistance operator. (Tr. 60-62.) Thus, the ALJ did not error in finding that Plaintiff could perform her past relevant work. *See Tanner v. Comm'r of Soc. Sec.*, 602 F. App'x 95, 101 (4th Cir. 2015) (unpublished) (noting that "the ALJ posed hypotheticals to the VE that set out all of [Plaintiff's] *credible* limitations") (emphasis added); *see also Reece v. Colvin*, No. 7:14-CV-428, 2016 WL 658999, at *2 (W.D. Va. Jan. 25, 2016) (unpublished) (finding "that the ALJ did pose proper hypothetical questions to the vocational expert that accounted for all of [Plaintiff's] credibly established limitations."), *report and recommendation adopted*, No. 7:14CV00428, 2016 WL 649889 (W.D. Va. Feb. 17, 2016) (unpublished).

Lastly, as to Plaintiff's argument that opinion evidence supports Plaintiff's inability to perform work at any exertional level, the ALJ gave little weight to Dr. Rauck's medical source statement. (Tr. 21.) As further explained below, substantial evidence supports the ALJ's decision to do so.

### B. Substantial evidence supports the weight given to Plaintiff's treating physician.

Plaintiff contends that the ALJ failed to accord appropriate weight to the medical opinion of Dr. Rauck. (Docket Entry 12 at 9-12.) The "treating physician rule" generally provides more weight to the opinion of a treating source, because it may "provide a detailed,

10

longitudinal picture of [the claimant's] medical impairment(s) [which] may bring a unique perspective to the medical evidence." 20 C.F.R. § 404.1527(c)(2); *see also* 20 C.F.R. § 416.927(c)(2). An ALJ refusing to accord controlling weight to the medical opinion of a treating physician must consider various "factors" to determine how much weight to give it. *Id.* § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6). These factors include: (i) the frequency of examination and the length, nature and extent of the treatment relationship; (ii) the evidence in support of the treating physician's opinion; (iii) the consistency of the opinion with the record as a whole; (iv) whether the opinion is from a specialist; and (v) other factors brought to the Social Security Administration's attention that tend to support or contradict the opinion. *Id.* § 404.1527(c)(2)-(6); *see also* 20 C.F.R. § 416.927(c)(2)-(6). "[I]f a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight." *Craig*, 76 F.3d at 590.

Opinions by physicians regarding the ultimate issue of whether a claimant is disabled within the meaning of the Act never receive controlling weight because the decision on that issue remains for the Commissioner alone. 20 C.F.R. §§ 404.1527(d), 416.927(d). In instances where an ALJ decides not to give controlling weight to a treating physician, he or she must adequate explain his reasoning. 20 C.F.R. §§ 404.1527(c)(2), 416.927(c)(2). When the explanation given is insufficient, it "preclude[s] [the Court's] ability to undertake the 'meaningful review' with which we are tasked on appeal." *Lewis v. Berryhill*, 858 F.3d 858, 870 (4th Cir. 2017) (citing *Radford*, 734 F.3d at 296)).

In the present case, on February 19, 2015, Dr. Rauck completed a medical source statement in which he stated that Plaintiff could not sit for even 6 hours or stand/walk for even 2 hours in an 8-hour workday. (Tr. 556.) He further stated that Plaintiff was limited in her ability to push and pull in her lower extremities and that she could only occasionally carry a maximum of 10 pounds. (*Id.* at 555-56.) Dr. Rauck also stated that Plaintiff could never kneel, crawl, stoop, or work around temperature extremes, vibration, humidity, and hazards, and that she could only occasionally climb, balance, reach, and handle. (*Id.* at 555-558.)

The ALJ addressed Dr. Rauck's opinion and accorded it less weight. (*Id.* at 21.) Specifically, the ALJ indicated that "the doctor did not perform any type of objective testing to support these limitations." (*Id.*) He further stated that Dr. Rauck's "objective findings are not that significant and other objective findings are not that significant either." (*Id.*) It is apparent that the ALJ considered the factors set forth in 20 C.F.R. §§ 404.1527(c)(2)-(6), 416.927(c)(2)-(6). In drawing her conclusion, the ALJ essentially found that Dr. Rauck's findings lacked medical corroboration and were inconsistent with the record as a whole. The ALJ noted, for example, that Plaintiff's visit with Dr. Rauck the day after the medical statement was completed indicated that Plaintiff exhibited normal range of motion with some decreased range of motion over the hips, and normal mood and effect. (Tr. 21, 537.) A doctor visit several weeks earlier noted that Plaintiff had only a pain level of 2 and was recently engaging in "a lot of activity." (Tr. 494.) In sum, the medical source statement is inconsistent with the longitudinal treatment record. Thus, substantial evidence supports the weight given to Dr. Rauck's opinion.

Plaintiff arguments to the contrary are unpersuasive. As stated above, the ALJ's reasons for rejecting Dr. Rauck's opinion are substantiated. In giving the opinion less weight, the ALJ did not ignore the treating relationship. Lastly, as gleaned from the discussion herein, Dr. Rauck's opinion was neither consistent with the medical record as a whole, nor consistent with Plaintiff's credible testimony. Therefore, Plaintiff's arguments fail.

## V. CONCLUSION

For the reasons stated herein, this Court **RECOMMENDS** that Plaintiff's Motion for Judgment on the Pleadings be denied (Docket Entry 11) be **DENIED**, that Defendant's Motion for Judgment on the Pleadings (Docket Entry 13) be **GRANTED**, and that the final decision of the Commissioner be upheld.

Joe L. Webster
United States Magistrate Judge

February 1, 2018
Durham, North Carolina